## Case No. 7,340.

### The JOHN FARRON.

[7 Ben. 53.] [1]

District Court, S. D. New York. Nov., 1873.[2]

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Reversed in Case No. 7,341.]

 

D. McMahon, for libellant.

R. D. Benedict and J. F. Malcolm, for claimant.

BLATCHFORD, District Judge. The libel in this case sets forth that, in June or July, 1872, the steamboat John Farron, sometimes called the Ella M. Stevens, being at the port of New York, the libellant, Gustavus Pierrez, at the request of her captain and owners, furnished her with supplies and materials, and work and labor, of the value of $1,571 90; that that sum, with interest thereon from July 27th, 1872, is still due; that said supplies and materials and work and labor were necessary and proper, and said vessel could not have proceeded on her voyage, or procured her employment, without the same, and they were furnished on the credit of the said vessel; that said vessel, during the entire period aforesaid, was a domestic vessel, owned by persons residing in the state of New York, or who had possession or control of her, as masters, owners, charterers, builders, or consignees, or agents of some one or all of them, in such way or to such extent as authorized them to charge her for the said work and supplies; that, during said period, she lay in tide waters of the port of New York, moored to a pier in the city of New York; that, during said period, she made no departure, in the way of her business, out of said port, nor has she made any since; that the libellant claims that he has a lien for the said work and materials, on the said vessel, by virtue of the act of the legislature of the state of New York, passed April 24, 1862, entitled "An act to provide for the collection of demands against ships and vessels" (Laws 1862, c. 482); that such lien is of a maritime nature, and he is entitled to enforce the same in the admiralty; and that, if it is not a lien under the local law, and enforceable as such in the admiralty, he has a good lien therefor, against the said vessel, under the general maritime law. The libel prays for process against the vessel, and for her condemnation. The libel was filed on the 29th of July, 1872.

An answer is interposed by one Henry F. Hamill, as claimant of the vessel, which sets forth that he was owner of the vessel during the several times stated in the libel; that, on the 20th of May, 1872, an agreement was made between him and Henry Gardner and Charles E. Stevens, of which a copy is annexed to the answer; that Gardner and Stevens took possession of the vessel on or about that day, with the understanding and agreement to fulfil the terms of said agreement; that, from the covenants expressed therein, they agreed to pay all bills and demands against the vessel, as is more fully set forth therein; that the libellant knew, or had reason to know, the contents of said agreement; that the services rendered and the materials furnished were furnished on the credit of Gardner and Stevens, and not on the credit of the claimant or of the vessel; that the claim is not a lien upon the vessel; that she was a domestic vessel at the time, and was owned by the claimant, who resided in the state of New York; that Gardner and Stevens had possession of the vessel for the purposes and under the authority set forth in said agreement, and not otherwise; that it is not true that any one had possession of her in such a way as authorized him to charge her for the said work and supplies; that it is not true that, during all the time alleged, she lay in the waters of the port of New York, or moored to a pier in the city of New York, or that she made no departure out of the port of New York; that she departed from New York and went to Jersey City during said period; and that the libellant has no lien on the vessel, either under the statute set up in the libel, or under the general maritime law.

The agreement referred to was in these words: "We, said Henry Gardner and Charles E. Stevens, do, upon the 20th day of May, 1872, agree to purchase from Henry F. Hamill, owner of the steamboat called the John Farron, as she now lies at or near Weehawken, N. J., the said steamboat, for the sum of ten thousand dollars ($10,000), upon the following terms, viz.: In notes of twelve hundred and fifty dollars each ($1,250), with interest, first note to be for 3 months, next 6 months, next 9 months, next 12 months, next 15 months, next 18 months, next 21 months, next 24 months, which shall be last, and which will, when paid, complete the payments; said notes to be made and signed by Henry Gardner and indorsed by Charles E. Stevens, with mortgage on said boat to secure same, insurance on boat, policy payable, in case of loss, to said Hamill; and, upon delivery of bill of sale, which shall be upon 25th day of May, 1872, we agree to deliver to said Hamill said notes, signed, indorsed and stamped, and mortgage, and insurance policy, and, upon such delivery, we are to have possession of said boat, and be allowed to commence making all alterations and repairs we may think proper; and we do agree that all work or repairs, or any or all bills so contracted, will be paid by us, and shall not be a lien in any way, either upon the said boat or her owner, the said Henry F. Hamill. It is understood that we purchase said steamboat as she now lies, with all on

board; and we further agree to pay to said W. H. Hazard, Jr., the sum of two hundred and fifty dollars in cash on said day." This agreement was signed by Gardner and Stevens, and delivered to Hamill. At the same time an agreement containing substantially like provisions, and agreeing to sell the vessel to Gardner and Stevens, was signed by Hamill and delivered to them.

Before the late war, the vessel was enrolled at the custom house in New York in the name of one Leary, as owner. She was then sold to the United States, and her former enrolment was cancelled, and no new enrolment of her was made. Afterwards, she was sold at auction by the United States, and purchased, at such sale, by Hamill, but she had never been enrolled in the name of Hamill. Hamill could give no bill of sale of her until she should be enrolled in his name, so that the enrolment might be copied into the bill of sale; and there could be no mortgage until there was a bill of sale. On the 27th of May, 1872, Hamill went to the custom house in New York, with Stevens, and there signed his name to a blank bill of sale, which had that date inserted in it, but had not in it the name of any grantee or any consideration. He acknowledged it before a notary public there. As repairs were to be made on the boat, she could not be measured until the repairs were made, and her measurement was required to be inserted in the enrolment, and so she could not be enrolled until after she was repaired and measured, and so the bill of sale could not be completed or the mortgage given until after she was repaired. All this was stated between the parties then and there at the custom house. Hamill then left the blank bill of sale, so executed, in the hands of a broker at the custom house, with instructions to hold it, and not to deliver it to any one until he, Hamill, should give further orders in respect to it. Nothing further was done in regard to it, and, some three or four months afterwards, the broker, on demand of Hamill, delivered it up to Hamill. It does not appear that the vessel was measured or enrolled. The vessel was lying at Weehawken, in New Jersey, and had been lying there unused for some time. Stevens, being desirous of obtaining possession of her, to commence making repairs on her, requested Hamill to let him have possession of her. Hamill did so, and she was brought to New York, and moored in a slip there. About that time the notes provided for by the agreement were given to Hamill, and policies of insurance on the vessel were taken out in the name of Gardner, expressing that the loss, if any, was to be payable to Hamill. The policies were delivered to Hamill, but he never gave any bill of sale or received any mortgage. Stevens, after obtaining possession of the vessel, employed the libellant to repair her boiler and en-

gine, and do some other iron work, and the claim in respect thereof is that for which this suit is brought. In employing the libellant, and before the work was commenced, Stevens informed the libellant that he, Stevens, and Gardner had purchased the vessel, and that the libellant would receive his pay for the work when it should be completed. The libellant knew Hamill personally, and knew that the vessel had been lying for a long time at Weehawken, engaged in no business, and that, while lying there, she belonged to Hamill. While the repairs were going on, Stevens and his employees gave all the directions in regard to them. Hamill was on board of the vessel while the repairs made by the libellant, and other repairs, which were being made at the same time, were progressing, but he gave no directions in regard to them, and exercised no acts of ownership over the vessel. The notes given to him were none of them paid, and he still retains them. Some money was paid by Gardner on account of bills for repairs to the vessel, but, the bills not being paid in full, the libellant and other parties sued the vessel in rem, and then Hamill took possession of her. The libellant had no information, until after this suit was brought, as to the contents of the agreement between Hamill and Stevens and Gardner.

It cannot be doubted, on these facts, that Hamill never parted with his title to the vessel. He always remained her owner. Nor did he ever, by anything he did or said, hold out to the libellant that Stevens and Gardner were her owners, in any such sense as gave them any right to bind the vessel for the repairs, as against the rights of him, Hamill, under the agreement. He gave them possession of the vessel, but it was not as owners, as against him, nor was it as his agents, as owner, so as to bind him personally for the repairs, but it was possession under the terms of the agreement, and for its purposes, and subject to its restrictions. Stevens, it is true, stated to the libellant that he and Gardner were owners of the vessel, and had purchased her. But that was not true. The libellant knew that Hamill had owned her. This was sufficient to put the libellant on inquiry to ascertain the facts from Hamill, or to examine the records of the custom house at New York, as he knew that Hamill resided and had resided at New York. If he had done this, he would have learned at once, that he could have no lien on the vessel, for this work, as against Hamill. He is chargeable with notice of all he could have learned, on inquiry, from Hamill. The agreement was not a purchase, but an agreement to purchase. By it, even when the notes, and policies of insurance, and bill of sale and mortgage were all of them passed and delivered, so as to give to Stevens and Gardner a right to the possession of the boat, the provision in regard to possession shows, that such possession, and

such ownership in Stevens and Gardner as would then exist, was to be such a qualified possession and ownership, that the alterations and repairs which Stevens and Gardner should make, at least so long as the purchase money notes were unpaid, were not to be a lien on the vessel or a personal charge against Hamill.

In a cause of action claimed to arise from circumstances occurring during the ownership of a vessel by a person whose vessel is proceeded against, it has never been held that any suit could be maintained against such vessel, where her owner was not himself personally responsible in respect of the cause of action, or where his personal responsibility had not been given up, as in the case of a bottomry bond, by taking a lien on the vessel. The Druid, 1 W. Rob. Adm. 391, 399. In the present case, the libellant has no cause of action against Hamill, and, therefore, none against the vessel.

The state statute relied upon by the libellant gives no support to this action, for, that statute purports to give a lien against a vessel only for debts contracted by her master, owner, charterer, builder, a consignee, or his agent. This debt does not fall within any of such debts.

Nor does the 12th rule in admiralty, as amended May 6th, 1872, give a right to the libellant to proceed against this vessel in rem. The rule, as amended, reads thus: "In all suits by material men, for supplies or repairs, or other necessaries, the libellant may proceed against the ship and freight in rem, or against the master or owner alone in personam." But this rule does not mean, that, when the master or owner cannot be sued on the contract (because, as in this case, there was no master with whom a contract could be made, and the contract in fact made was not made with the owner or with his agent), the vessel may be sued in rem. The rule does not abrogate, and is not in conflict with, the recognized principle, before mentioned, which requires that there must be a cause of action against Hamill, founded on contract, before there can be a cause of action against the vessel. The libel must be dismissed, with costs.